IC

**RECEIVED**

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MAY 29 2024

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| **DIANE FIELD , an Individual with disabilities,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | 1:24-cv-04383 |
| **v.** ) | Judge Robert W. Gettleman |
| ) | Magistrate Judge M. David Weisman |
| **ROOSEVELT UNIVERSITY,** ) | RANDOM / Cat. 2 |
| ) | |
| **&** ) | |
| ) | |
| **ROOSEVELT ADJUNCT FACULTY,** ) | |
| **ORGANIZATION** ) | |
| ) | |
| **Defendants.** ) | **JURY DEMAND** |

## COMPLAINT

**NOW COMES** PLAINTIFF DIANE FIELD ("Plaintiff" or "Diane"), an individual with

multiple disabilities, for her Complaint against **DEFENDANT ROOSEVELT UNIVERSITY**

**BOARD OF TRUSTEES** ("RU"), and the **DEFENDANT ROOSEVELT ADJUNCT**

**FACULTY ORGANIZATION** ("RAFO"), states as follows:

### I.      INTRODUCTION

1.      Diane is a disabled, low-income person who grew up in Lemont, Illinois, where she still

lives with her service animal, Ada, in an old, former parish house across the street from her long-

time church, St. Alphonsus.

2.      Diane receives Social Security Disability Insurance ("SSDI") and lives on a limited

budget that she closely monitors and follows.

3.      Diane also has a Section 8 Voucher from the U.S. Dept. of Housing which helps pay for her home mortgage, but she still needs some additional income to make those payments each month and to repair & maintain her old house.

4.      Diane has received tuition assistance as a student and employment assistance from the Illinois Dept. of Rehabilitative Services ("DRS")' Division of Rehabilitative Blind Services due to her disabilities, including her vision-based communication deficits, while she works and attempts to improve her professional skills.

5.      Diane wants to work and apply her graduate degree in math, and she works as a part-time adjunct Math Instructor at Roosevelt University in downtown Chicago, Illinois to which she commutes from the Metra Station near her home.

6.      Diane works whenever RU gives her job offers before each semester that seem manageable to her, and if so, she accepts teaching one or more math courses.

7.      Diane has earned a Masters in Actuarial Science, but she has endured a great deal of discrimination due to her disabilities and her advocacy for herself and her students with disabilities when she attempts to work, improve her professional skills as a student, and better herself financially.

8.      Diane as an RU instructor and student has endured discriminatory preferences & denials; repeated denials of needed accommodations, restriction of training & development opportunities, occupational segregation, harassment, discriminatory interference with the exercise of her disability rights, and retaliation for her advocacy for herself and for her learning-disabled students.

9.      RU has done these things with deliberate indifference, reckless indifference, or malice, and these things have harmed Diane.

10.     At times, RAFO has aided and abetted RU in some of these actions and omissions, and it has done so with at least deliberate or reckless indifference.

11.     Diane requests legal and equitable relief including declaratory & injunctive relief, and compensatory & punitive damages to the extent allowed by law to address and prevent these harms in her further employment and studies at RU, to make her whole, and to vindicate the public interest as Congress has legislated that it is the policy of the Nation to eliminate discrimination against those with disabilities and their advocates.

12.     This action is also brought to recover costs, including reasonable attorneys' fees, but that cost recovery is deferred until it may be ripe and judgment on the merits and/or appeal is finalized for each cause herein.

13.     These allegations are in part based upon specific, enumerated legal rights, including: a.) the mandated provision of Auxiliary Aids & Services for those with communication deficits under ADA; b.) electronic communication accessibility mandates; and, c.) other specific postsecondary regulations.

## II.      JURISDICTION & VENUE

14.     The Court has jurisdiction over this cause of action as a federal question per 28 U.S.C. § 1331 and as supplemental jurisdiction arising from causes of action that are part of the same case or controversy per 28 U.S.C. § 1367. Declaratory & injunctive relief is authorized be 28 U.S.C. 2201 and 2202, and Rule 57 FRCP, and injunctive relief is specifically authorized under ADA Title III.

15.    Venue is proper in this Court because the acts complained of occurred, and the parties reside and do business, in the Northern District of Illinois.

### III.    PARTIES

**Plaintiff Diane Field**

16.    At all times pertinent, Diane has been an individual with disabilities including, but not limited to, a vision-based communication deficit, learning disabilities, sensory integration disorder, and anxiety disorder.

17.    Within the last several years, Diane has been diagnosed with autism.

18.    Diane's disabilities create substantial limitations in her major life activities including, *inter alia*, seeing, learning, communicating, socializing, and orienting herself spatially when standing and moving.

19.    At all times pertinent, Diane has shared these disabilities, and the substantial limitations in major life activities they have caused her to experience, with others, including RU & RAFO.

20.    Diane has provided much of the documentation of her evaluations and diagnoses to RU that provides a record of her disabilities.

21.    Diane is considered disabled by RU, RAFO, fellow students, and instructors.

22.    Since first hired, Diane has been considered an employee by RU whether or not she is teaching a course each semester.

23.    At all times pertinent, Diane as an employee and as a student has been an otherwise qualified individual with a disability who can perform and has proven she can perform the essential functions of her job with or without accommodations.

24.    Some of the time, Diane has been an actively enrolled math student at RU.

25.     At all times pertinent, Diane as a student has also been an otherwise qualified individual with a disability who has proven herself to be academically and technically qualified with or without accommodations.

26.     Diane checks the RU course-finder every upcoming semester for possible advanced math courses to take at RU.

27.     Diane often struggles to find a proper advanced math course at RU, but when she finds one, she then enrolls as a student if she can fit it into her busy schedule for therapy, professional training, course teaching preparation, work, & commuting.

**Defendant Roosevelt University**

28.     Defendant RU is private university providing public accommodations in Chicago, Illinois which accepts federal & state funds.

29.     Defendant RU is a postsecondary educational institution that is a place of public accommodation under ADA and the Illinois Human Relations Act ("IHRA") (775 ILCS 5/5-101(A)(11)).

30.     Defendant RU employs approximately 500 employees, including Diane as a part-time Adjunct Math Instructor.

31.     Defendant RU is a covered entity under the ADA Title I & III, the Rehabilitation Act , and the IHRA.

**Defendant Roosevelt Adjunct Faculty Organization**

32.     Defendant RAFO is a private sector union representing adjunct faculty, both part-time & full-time, at RU.

33.     RAFO is covered by ADA Title I & III, the Rehabilitation Act, and the IHRA.

34.     At all times pertinent, Defendant RU has had a contract with the Roosevelt Adjunct

Faculty Organization ("RAFO") that represents RU adjunct faculty members.

35.     At all times pertinent, Diane has been a RAFO member in good standing.

## IV.     FACTS

36.     About 2010, Diane earned a Masters Degree in Actuarial Science from RU, in spite of her

own learning disabilities,

37.     Diane has intermittently re-registered for previously completed actuarial coursework as

preparation for gaining professional certification from the Society of Actuaries ("SOA") so as to

qualify for a well-paid job as a professional Actuary.

38.     While attending RU, Diane successfully assisted other RU students, with their math

studies as a volunteer tutor without any request, formal permission, or support from RU.

**RU Recruited Diane because She is a Superior Math Teacher**

39.     After this continued for some time and her frequent success and contributor as a

volunteer tutor became readily evident to the RU math faculty, RU hired her a part-time math

teacher.

40.     Around August of 2010, RU's initial job offer to Diane was for her to teach RU's

remedial course(s) in math to assist students in learning enough basic math to qualify to take, and

to succeed in passing, college level math courses at RU. Thereafter, RU has offered Diane

courses to teach in such remedial math courses in many, if not all, semesters since then.

41.     This repeated offer and Diane's willingness to teach has had the effect of relieving most

of the other math faculty from having to teach basic math to those who often have severe

learning disabilities.

**Diane Has Non-Obvious Disabilities**

42.     To the casual observer, many of Diane's disabilities are not obvious, but when Ada, her service animal, is working beside her with a vest that states in large letters "Service Dog," at least others can tell she has some type of disability.

43.     It usually takes time for others to recognize Diane's substantial limitations in major life activities due to her disabilities and adjust their demands on her accordingly.

44.     Diane readily volunteers an explanation of her non-obvious disabilities if she knows it is relevant to her interactions with those she meets.

45.     Diane does this frequently because others commonly expect more communication from her than she can verbally and timely produce during a typical conversation.

46.     At all times pertinent in her roles as employee and student, Diane has explained and documented her multiple disabilities to RU.

**Diane's Needs & Substantial Limitations**

47.     At all times pertinent, Diane has informed RU and its agents of her substantial limitations in using the RU websites and internal email systems for long periods of time, and the pain it causes her when she is required to do so.

48.     When teaching, Diane's vision-based communication deficits causes her to expend a large amount of physical & mental energy, especially in teaching those with severe learning differences and a history of previously deficient schooling in math.

49.     In order to teach math effectively, Diane requires, among other things, an appropriately lit classroom, a nearby respite area, and an uncrowded corridor or stairway connecting them by which she can quietly walk undisturbed to recover physically & emotionally after teaching.

50.     Each math class lasts at least an hour, and Diane may have to teach a second class immediately after the first.

51.     Diane teaches after she endures a sensory grueling commute that takes her an hour and a half from Lemont, IL to the University.

52.     When these accommodations are altered or removed, Diane becomes neurologically dysregulated and begins involuntarily crying from the pain of the auditory overload, and she intermittently loses the ability to use expressive language.

53.     Consequently, on such occasions, she cannot respond appropriately as an instructor in front of her students or when traveling through the busy RU hallways and stairways.

54.     This crying from the pain of the dysregulation and intermittent loss of expressive language at these times causes her public embarrassment, loss of dignity, limits her effectiveness as an instructor, and causes her to risk physical injury, as shown by her recent accident resulting in a broken hand (see below).

55.     Diane's recovery time is not linearly related to the exposure time of the stimuli leading to the dysregulation. Recovery time can become exponentially longer, even taking days at times, especially if she must travel through a congested and brightly fluorescent lit hallway to obtain respite.

56.     If her travel time from her classroom to her respite area doubles, her recovery time can more than quadruple.

**Initially Work Stations Concession Granted for Diane, then Denied When Requested Again**

57.     For some time, RU had assigned Diane to teach her course in a particular classroom, AUD406.

58.     Diane requested use of a nearby office, AUD402, only 30 feet away for use as a respite area, and RU granted this as a concession to Diane.

59.     The current situation in 2024 requires Diane to walk the entire length of the fluorescent lit hallway to the other busy end of that hallway to AUD420, a distance of over 130 feet away from her respite area in AUD402.

60.     AUD420 is right where the main stairwell, main elevator, and main adjacent corridor all converge.

61.     RU has reason to know that this scenario is the exact opposite of what Diane's clinicians have documented as required; and Diane has placed such documentation on file officially with RU. HR used this documentation as a basis for placing Diane in AUD406 in 2022.

62.     Moreover, Diane has consistently provided such documentation to RU ever since RU claimed that it had lost Diane's accommodations records from when Diane was a student at RU from 2006 to 2010.

63.     Diane's current classroom in 2024, AUD420, is not appropriate for a person with autism and vision-based communication deficits as the fluorescent lighting in the corridor to AUD402 is debilitating.

64.     Moreover, as a corner classroom, AUD420 has an additional wall of windows that increases the noise from alarms and sirens on Michigan Avenue below.

65.     Piercing sirens neurologically dysregulate and cause intermittent loss of expressive language, thus accelerating Diane's need for respite.

66.     The much-needed respite area is also for her service animal to provide proper aid to Diane.

67.     That respite area is now too far away for her to properly access without causing Diane more physical & emotional stress and increasing her recovery time. See future Exhibit.[1]

68.     This distance of Diane's teaching classroom from her respite area, and the stress it can cause if it is too distant, makes it very difficult for Diane to navigate the busy hallway between them, or to ensure her psychological well-being and personal safety during and after her travel.

69.     A crowded hallway and fluorescent lights prevent Diane from successfully maneuvering the hallway, resulting in her language being compromised so that no one knows how to help her while she is involuntarily crying from the psychological stress.

70.     Barb Anderson, Head Instruction/Learn Librarian, acted on behalf of Diane and asked for AUD411 as respite area from Diane's Dean, Kelly Wentz-Hunter, but the request was denied.

71.     When Diane was a student, the disabilities office was able to request AUD411 for Diane to use to take tests and the request was granted every time it was requested during all of 2006 through 2010.

72.     Diane used an advocate to request her accommodations whenever she could not make a cogent request by herself due to Diane having autism and needing assistance in such matters.

**Inadequate Recovery Causes Risk of Physical Injury**

73.     Failing to recover completely creates substantial risk which can physically endanger Diane during her substantial commute, even though this is not readily obvious to others.

74.     Recently, Diane was in AUD420 for 2.5 hours to teach two back-to-back classes.

---

[1] Ms. Field has many documents corroborating her allegations in this Complaint. However, due to her vison deficiencies, autism, and repeated discrimination by her employer, she has difficulty finding those documents. She notes here the existence of certain exhibits for the record. Ms. Field respectfully requests the Court to direct any appointed attorney to assist her in locating these and other relevant records for proper use in this case. An example of identifiable documents that here should be Exhibit 1 is a pair of documents from Marshall and Shaw dated 03/07/24 and 02/21/24 that detail concerns from Diane's professionals and their reasoning for respite area needing to be close to her teaching classroom.

75.     During this period of time, the sirens were loud from the street below and the fluorescent lighting was causing her dysregulation and stress.

76.     Diane was unable to get the full respite needed to recover between classes, but Diane went to AUD402 to get brief respite after the 2nd class and then she walked to Union Station to catch the train to Lemont, which is a limited-service train line.

77.     At Union Station, Diane had an episode where she couldn't talk and almost fainted due to lack of respite from classes.

78.     Diane had to hail a train conductor and a passenger for help because of her limited ability to speak; and fortunately, they responded and walked Diane to the train and assisted with her service animal, Ada.

79.     Once Diane got home, she was still dysregulated and unable to properly handle her dog on its leash, ultimately resulting in Diane breaking her hand.

80.     This type of accident never occurred when Diane was scheduled in AUD406 to teach and allowed the proximity of respite area AUD402, only 30 feet away and within a secluded corridor and the other end of the hallway, away from the main convergence in front of AUD420.

81.     Diane's mental recovery took days due to the overwhelming situation, and the physical recovery includes time off for her broken hand to mend; all of this could have been avoided with continued concessions of AUD406 and the close respite area of AUD402.

82.     Ironically, once Diane showed Math Dept. Chair Melanie Pivarski that she had a broken hand, RU only then provided Diane the grading assistance needed, and the ability to hold her courses over Zoom, but this was not provided when Diane was at risk of physical injury but not yet visibly harmed, as explained below.

83.    RU is directly responsible for this foreseeable harm to Diane by denial of the effective accommodation she had previously been granted as a concession by RU.

**Diane Needs Auxiliary Aids & Services**

84.    Diane as an instructor requires auxiliary aids & services to communicate effectively with her students, including when accessing RU websites & internal email systems.

85.    Diane also needs auxiliary aids & services when she is shopping for, applying for, and working on RU courses as a student or prospective student.

**RU Website & Email Inaccessible to Diane**

86.    Yet, when Diane is an RU Student or when she is shopping for an advanced math course as a prospective student, she is required to use the RU websites and RU email system as part of her shopping, course application, and course work for her educational program.

87.    When Diane is working at RU, she is also required to use the RU websites and internal email system.

88.    However, Diane has to struggle to use the RU websites and email system due to her substantial limitations, in part caused by her vision-based communication deficits.

**Illinois Assistive Technology Program Evaluation**

89.    Diane's web accessibility was evaluated by Jessica Shyler, who is the Illinois Assistive Technology ("IL AT") Program Evaluator assigned to her from the DRS, Div. of Rehab. Blind Services. Exhibit XXX.

90.    Ms. Shyler analyzed Diane's other evaluation reports & interviewed her.

91.    Ms. Shyler also analyzed the RU websites that Diane must access for her job at RU as a math instructor.

92.     When Diane is an enrolled student or a prospective student shopping for advanced math courses she might take, she must access many of these same RU websites that she must access for her job.

93.     Ms. Shyler determined that Diane needs many things to access websites and interact with them effectively. See future Exhibit.

94.     Ms. Shyler also determined that there is a very heavy and distracting cognitive "load" on the RU website visually because of the numerous changing video clips it plays in the foreground. *Id.*

95.     Whenever the website is updated, Diane needs to be re-trained, as stated in Shyler's documentation.

96.     Immediately after Diane first obtained a copy, she gave RU a copy of this IL AT Evaluation. See future Exhibit.

**RU Requires Training on Blackboard via its digital newsletter, Inside Roosevelt**

97.     RU provides training on its website which Diane cannot utilize because of its digital inaccessibility.

98.     One such training program is regarding Blackboard, a program application that RU requires Diane to use to grade papers & homework and to report grades to RU.

99.     Blackboard training is scheduled and announced through *Inside Roosevelt*, a digital newsletter emailed to the Roosevelt community, including Diane.

100.    This emailed digital newsletter has the technology assistance hours embedded within it, but there are multiple steps Diane must memorize to be able to find the dates and times available to check if these dates correspond with her availability.

**Diane's Email Overload & Her Three Hour Computer Use Prescription**

101.    Diane's email inbox usually contains numerous emails from students, and the RU emails

include *Inside Roosevelt*, the content of which contains announcements; emails from colleagues,

emails from students, emails from administrators, and authorized emails from RAFO, her union.

102.    Any RU email, including those within the *Inside Roosevelt* digital newsletter, becomes

daunting to find among those emails when Diane receives them as a person with autism

experiencing the need for executive functioning accommodations as recommended by the Job

Accommodations Network ("JAN"), another State assistance organization.

103.    This multistep embeddedness makes it hard to locate & access on Diane's computer

screen due to her vision impairment.

104.    This also makes it difficult to find the right email at any point in the three hour window

of daily computer use allowed by the written order of Diane's doctor, as Diane has explained to

pertinent staff at RU. See future Exhibit.

105.    As the intended email announcement recipient, Diane must go through the very busy RU

website to identify the Faculty tab, which is difficult visually for her.

106.    Next, Diane must search the Faculty tab to find the Email tab & click on it; then once

inside the emails, Diane must locate the Inside Roosevelt newsletter by scrolling though each

email as the Inside Roosevelt editions is scattered throughout all the emails in Diane's inbox.

107.    The only way to locate the correct one for which she is searching is by opening each one

and scrolling through it to identify any pertinent Announcement.

108.    Diane must identify the correct email and click on it to access and read it.

109.    These multiple step procedures become visually exhausting for Diane who had asked

Susan Lamparter for the simple accommodation of a phone call when she was first diagnosed

and which Susan granted as a concession to Diane.

110.   HR later breached that agreement because it didn't come through HR.

111.   HR instead insisted Diane's Dept. Chair be the one to help Diane with Blackboard.

112.   This additional requirement was unnecessary.

113.   Moreover, this additional requirement put more work on Melanie Pivarski, who makes the job offers.

114.   This additional requirement created a disincentive for Melanie Pivarski to give Diane any job offers for advanced math course teaching, since the developmental (basic math) courses do not involve the use of Blackboard.

115.   This digital inaccessibility reduced the benefit Diane derives from the digital resources of RU because it requires much greater effort for her than for the nondisabled teachers at RU who are better able to navigate the RU website & emails for work and derive more benefit from RU's digital services.

116.   Spending time searching through emails for an announcement also subtracts from the time Diane could spend grading papers & interacting with students to answer their questions about their school work.

**RU Discriminatory Preference for Non-Disabled Teachers in Job Offers & Hiring**

117.   RU's union contract with RAFO does not restrict RU's discretion before each semester in offering part-time adjunct faculty opportunities to teach math courses.

118.   RU has used this discretionary ability to give preference to non-disabled teachers over Diane as a person with disabilities through selective, discriminatory criteria or administrative methods, or synergistically when some of these individual criteria and/or methods are combined together.

119.    This includes, but is not limited to, using arbitrary reasons for new hiring of nondisabled teachers to teach courses that Diane is qualified to teach or could readily become so with access to training.

**Direct Denials of Diane's Requests to Teach MATH 110 Show Discriminatory Hiring**

120.    Diane has asked to teach MATH 110, a college credit course, many times.

121.    Recently, Diane again asked her Math Dept. Chair, Melanie Pivarski, if she could teach MATH.

122.    Melanie Pivarski told Diane "No," and then told her that there was no way to configure all of the student computers with all of the software that IATP recommended for Diane.

123.    Of course, the IATP had only recommended software for Diane's computer, not that on other students' computer.

124.    This was an example of the RU preference for non-disabled teachers over Diane as a teacher with a disability.

125.    In this case, a false equivalence between Diane's computer needs and that of others was used to justify a preference for non-disabled teachers and exaggerate the content of Diane's accommodation request to teach the proposed course.

126.    As is typical at RU, no one at RU provided a contemporaneous, written statement explaining the reasons for the denial of the accommodation request perceived by RU.

127.    No effective alternative accommodation was offered to Diane.

128.    By this, RU showed deliberate indifference, gross misjudgment, or reckless indifference in its actions.

129.    This was also an example of use of discriminatory criteria and methods of administration in that RU arbitrarily inflated the cost and administrative burdens of providing the accommodation Diane would actually need.

**RU Denied Diane the Use of a Grader**

130.    Then Diane spoke with her RAFO Grievance Chair about requesting a grader.

131.    Melanie Pivarski responded that Diane needed to do the grading because of the "nature of the course," referring to MATH 110.

132.    Then Diane suggested that she could print the assignments, grade them offline, and then uploading the graded papers to Blackboard for return to the students.

133.    Diane told Melanie Pivarski that DRS already provided Diane with a commercial grade printer for this work. See future Exhibit.

134.    Melanie Pivarski sent Diane an email on or around October 2022 stating that Diane was "not a good fit for MATH110." See future Exhibit.

135.    Melanie Pivarski only offers Diane low level, noncredit course because she thinks it's "the right thing to do."

136.    In fact, when DRS spoke with HR, an HR employee told DRS that "Diane is a wonderful employee."

137.    This overprotective procedure is unwanted and interferes with Diane's job opportunities, and it masks a discriminatory preference that harms Diane's employment opportunities.

138.    Melanie Pivarski hired another adjunct faculty to teach course MATH 110, instead of allowing Diane to bid on the course since Diane has a Level 4 seniority which qualifies her to teach MATH 110.

139.    At no time did RU provide a contemporaneous, written statement of the reasons for denial beyond these facts, resulting in no effective accommodations for Diane.

140.    RU's failure to provide this statement also showed bad faith.

141.    RU has harmed Diane by using discriminatory preferences and denying her training that would contribute to her professional advancement.

**RU Denied Many of Diane's Requests for Accommodations**

142.    RU has effectively denied Diane's requests for accommodations in many ways, and they resulted in no effective accommodations for Diane.

143.    At times, RU has ignored Diane's requests for accommodations.

144.    At times, RU has outright denied Diane's requests for accommodations.

145.    Frequently, RU has delayed in responding to Diane's requests for accommodations beyond the time in which RU knew each was needed.

146.    At times, RU has expressed false or baseless excuses on why Diane's requests for accommodations are being denied.

147.    On information and belief, RU denials of Dianes' requests for accommodations are made without RU conducting a diligent assessment of the substantial limitations due to Diane's disabilities and of the program or policy pertinent to each request.

148.    Diane has never seen or heard of any evidence of such diligent assessment.

149.    Most of the time, RU has failed to offer an effective alternative accommodation or provide Diane with a contemporaneous, written explanation of its denial.

150.    At all times pertinent, Diane has requested accommodations from RU when needed and participated in the required interactive process in good faith, but that has usually not resulted in effective accommodations for her as a student, prospective student, or as an employee.

**Requests for Blackboard Training Denied & Only an Ineffective Alternative Provided**

151.    Diane explained her vision impairment to Susan Lamparter, the RU Blackboard Trainer. Diane verbally requested verbal 1:1 Training. See future Exhibit.

152.    RU's HR ultimately denied Diane's request via an email to Susan Lamparter with notification to Diane's Union. See future Exhibit.

153.    Other RU staff have direct access to Blackboard Trainer. HR purposely discriminated against Diane in this instance.

154.    Diane's union did not support Diane in this case.

155.    The HR response offered an alternative: that Diane's Dept. Chair, Melanie Pivarski, was available for training instead.

156.    However, this would be ineffective because Melanie Pivarski has been too busy to be available for the training session as she has been unavailable for training Diane when it would be for as little as one hour in the past.

157.    Further, burdening Diane's Dept Chair every time she needs training will decrease her incentive to offer Diane a job rather than offer it to a colleague who can utilize Blackboard Training on their own.

158.    This has the effect of making the proposed alternative training less effective for Diane and disadvantaging her as an individual with disabilities relative to nondisabled instructors who Diane's competes with to get job offers.

**Diane's Supervisor Blocked the Alternative Accommodation from Implementation**

159.    Further, when Diane asked Melanie Pivarski for this alternative Blackboard training, she blocked Diane's accommodation by telling her that Diane "didn't need the Blackboard training" that she was requesting. See future Exhibit.

160.     This was an effective denial of Diane's accommodation request by her Supervisor, Melanie Pivarski, and it resulted in no effective accommodation for Diane.

161.     At no time did RU provide a contemporary written statement as to the reasons that Diane's preferred accommodation was denied, why her evaluations was incorrect regarding her needs, or why the alternative accommodation offered by HR was blocked from being implemented.

162.     As a result, Diane was effectively denied access to a Blackboard trainer and Diane was limited to training by Diane's Math Department Chair Pivarsky who effectively denied Diane any training.

163.     These acts or omissions caused Diane harm.

**RU Used RAFO to Aid & Abet in Discrimination against Diane**

164.     Diane was forced to talk to Math Dept Chair about offers for teaching classes.

165.     Diane was unable to talk to HR about accommodations necessary to properly analyze a job offer.

166.     This makes it impossible to properly commit to accepting an offer without understanding if she will have the tools to properly teach.

167.     Diane's Union asked Dept Chair for a meeting amongst all three parties.

168.     Jill Chapman, Asst HR Director, denied Diane access to her union representative, Jennifer Wilson, who had arranged a meeting with Diane's Dept Chair to ask what qualifications she needed to teach MATH 110 by requesting Wilson to cancel the meeting, which she did.

169.     By canceling the meeting, Jennifer Wilson aided and abetted the discriminatory acts and omissions of Chapman and HR against Diane.

20

170. Jennifer Wilson of Union did this with deliberate indifference or reckless indifference toward Diane.

171. Diane asked Jennifer Wilson to meet with private ADA coordinator Jana Burke and Equip for Equality employment attorney Hannah Walsch, who also performs the role of Diane's Client Assistance Program ("CAPS") representative with Division of Rehabilitative Services ("DRS").

172. Wilson agreed.

173. The meeting was called for these two specialists to educate Wilson regarding lengthy delays HR was taking during the interactive process.

174. At end of meeting, Hannah Walsch asked Diane if there was anything else.

175. Diane asked Jennifer Wilson to please speak to Jill Chapman of HR to stop discriminating against her.

176. Wilson replied "No, I have a contract to negotiate with her."

177. Wilson and other Union stewards denied Wilson's reply to Diane.

178. This essentially left Diane without union protection and advocacy for reasonable accommodation requests, leaving the unreasonable expectation for Diane to commit to a job offer without being able to discuss reasonable accommodations first.

179. This limited Diane's job opportunities, her income, and otherwise harmed Diane.

**Diane Requested Training, but It was Inaccessible**

180. During the Fall of 2022, Diane requested EXCEL Training from Toyia Stewart, Director of HR.

181. Diane's request was not accommodated. See future Exhibit.

182.     Dawn Teft from IEA became involved after Diane found them on her own accord after asking Jennifer Wilson repeatedly for access to an attorney, believing her rights had been violated.

183.     RAFO paid for Diane to obtain ADA coordinator certification.

184.     Thereafter, RU failed to offer an effective alternative accommodation or provide Diane with a contemporaneous, written explanation of its denial, other than Jennifer Wilson's verbal reasoning at the end of an alternative meeting that took place during the time of the canceled initial meeting between Diane, Jennifer Wilson and Diane's dept chair, Melanie Pivarski.

185.     The alternative meeting was called by Diane to educate Jennifer Wilson regarding the ADA rights from the coordinator training Jana burke, an independent ADA accommodations expert and instructor through the Missouri certification program and Hannah Walsch, an employment attorney at Equip for Equality.

**Diane's Requests for Assistance for Her Students with Disabilities**

186.     Since Diane had to struggle to obtain her Masters in Actuarial Science, she empathized with her students with learning disabilities who struggled like she did to learn math.

187.     It is Diane's habit & routine to advocate for her disabled students who need auxiliary aids & services or other accommodations to learn effectively, and to advocate for herself where Diane needs accommodations to teach them effectively.

188.     Diane knew that if she didn't advocate for her students with disabilities that they wouldn't do so for themselves.

189.     In Fall semester of 2022, Diane began to advocate for one of her students, "Student E.," who has severe communication problems and presented on the Autism Spectrum in her math class, MATH 010.

22

190.    MATH 010 is a remedial skill support class to prepare students to take the more advanced MATH 110.

191.    Diane worked to get Student E. to do written math problems in her class, even though no other faculty had been successful it doing this; however, she succeeded.  See future Exhibit. Student E. Practice Test No.1.

192.    Diane saw that Student E. was having difficulty engaging in class due to his apparent autism and other communication deficits.

193.    Using guidance and training previously received, Diane requested assistance from Student Disability Center for communication accommodations for Student E due to his autism and other communications. See future Exhibit.

194.    Diane's request was denied stating the student had to ask directly for accommodations, despite Student E's inability to request such accommodation. See future Exhibit.

195.    Thereafter, RU failed to offer an effective alternative accommodation for Student E or provide Diane with a contemporaneous, written explanation of its denial.

196.    By denying these accommodations, the Defendants knew or had reason to know that she was engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA, 504 & IHRA protected rights.

**Job Coach & Diane's Requests as a Teacher**

197.    Several months ago, Diane requested a job coach to assist her when she teaches class

198.    RU initially denied an accommodation of a job coach.

23

199.   The Job Accommodations Network ("JAN") Autism Specialist Melanie Whetzel said to DRS that the Job Coach could stand next to Diane when she needed to express her needs/accommodations to HR.

200.   Based on the recommendation of JAN, DRS provided funding for Job Coach.

201.   RU must provide accommodation when a reliable and independent third party determines it is necessary, or explain in writing why not, yet they did not adhere to this standard.

202.   As an alternative, Union approved Cicero Brooks to perform as a substitute job coach. See future Exhibit

203.   HR stalled to fill the actual role HR denied allowing Diane to work with Cicero.

204.   HR told Cicero Brooks he was too busy to take on these tasks.

205.   Another colleague offered to fill this role for 2024 Spring Semester and HR denied this as well.

206.   HR made Diane wait until midterms and after a doctor requested HR reinstate this former concession.

207.   RU delayed in granting this request, despite the job coach being provided and funded by a different organization, DRS.

208.   The EEOC had to get involved for resolution due to RU's intentional thwarting and frustrating completion of the job coach accommodation.

209.   RU's delay in granting this request limited Diane's ability to perform the essential functions of her job and prevented her from effectively negotiating with HR regarding accommodations for upcoming semester (Spring 2024).

210.   RU's delay caused Diane increased frustration and harm.

24

211.    RU's delay also had the effect of adversely changing Diane's job conditions relative to other Faculty members, and harmed her.

212.    The lack of help led to the broken hand and incident at Union Station because Diane was overwhelmed by tasks for work plus environment and did not have assistance needed.

213.    The current staff person selected by RU does not seem to be available during one of Diane's two class days. At best this is a half job coach/tutor with limited assistance.

**Diane's Requests as a Student Frequently Granted, but Not Her Requests as a Teacher**

214.    During the Spring semester 2020, Diane took actuarial exam preparation courses.

215.    During that semester, Diane as a student had to struggle with the access to RU online homework.

216.    That inaccessibility that the effect of making her student efforts much more difficult than it did for nondisabled students in her class.

217.    At that time, Diane requested a reasonable accommodation from Kathleen Mullins, Director for Student Accommodations.

218.    The accommodation was granted so Diane could continue working in the class, as a student.

219.    As a student, Diane was also given the reasonable accommodation of taking exams for hours at a time in AUD411 by Nancy Litke, Director of Student Disabilities.

220.    Accommodations as a student were granted, but the same person as a staff member, is having her rights denied by the same organization, RU.

**Diane's Other Requests Denied**

221.    An RU DEI group composed of RU Administration and Staff invited Diane to their group.

222. Numerous people in the group consulted Diane on physical reorganization for students.

223. However, Diane is not getting the needed accommodations she requests, and she feels misused and emotionally traumatized by RU in this process that repeatedly addresses accommodations of others without addressing her problems with gaining reasonable accommodations from RU.

224. The group pays limited attention to diversity among students with neuro-diverse learning habits; instead it focuses on more obvious diversity categories, such as gender, race, and orientation, as evidenced in various surveys & questionnaires it created for students.

**RU Facility Modifications, Alterations, & Related Scheduling of Courses**

225. RU has frequently remodeled and rearranged its classrooms, office spaces, and work environments for instructors and students as modifications and alterations.

226. RU has a duty to maintain those features of its facilities and equipment that are required to be readily accessible to and unable by Diane as a person with disabilities under 28 CFR § 36.211(a) Maintenance of accessible features and otherwise.

227. Some of the modifications & alterations to these facility spaces have disadvantaged Diane as an individual with disabilities.

228. In spite of RU spending large amounts of money on facility modifications & alterations, RU still has no Adaptive Space to park a Service Animal near instructors or students so it may be out of the way, but readily available to perform the tasks they have been trained to perform when needed, esp. during class.

229. Further, RU has no Adaptive Space that is distraction & noise minimized near instructors or students with disabilities in class, including Diane, so they may find temporary respite when

they are severely taxed by their activity, but exhausted from expending energy in teaching or studying.

230.  In fact, the net effect of the RU facility modifications and alterations has been to make it harder for Diane as a person with disabilities to teach.

231.  At all times pertinent, RU has also modified its course schedules for these facilities as modified & altered, but course schedules and arrangements have been limited by the resulting physical changes to the facilities and operations.

232.  These RU facility modifications & alterations, together with its course schedule changes and arrangements have had the effect of disadvantaging Diane in the jobs offered and her potential hiring as an adjunct faculty in positions for each semester's math courses.

233.  These discriminatory administrative methods have the effect of disadvantaging Diane as an individual with disabilities from teaching math courses as an adjunct faculty member, over her fellow math teachers without Diane's relevant substantial limitations in major life activities.

**Occupational Segregation & Limitations in Low Level, Non Credit Course Teaching**

234.  As a result of Diane's lack of training in key areas, RU claims it can only offer Diane low level courses to teach, even though she has ~~higher math schooling than some~~ her Masters degree as others without disabilities who are offered higher level courses to teach. D.F. 5/29/24

235.  By this, RU has denied Diane the opportunity to teach more advanced math courses, although others without disabilities ~~or her advanced math degree & schooling~~ have been provided with these opportunities. D.F. 5/29/24

236.  All of this has resulted in RU occupationally segregating Diane in low level, high school credit math courses without much hope of progressing to higher math course jobs.

237.    Said conduct, acts, and omissions, harm Diane as an individual with disabilities in her RU employment and as an advocate for her disabled students who she helps to gain access to higher math courses.

**Diane's Request for Accommodations for Fall 2024 were Denied**

238.    During April of 2024, Diane met with HR, Student Disability Services, and Diane's Psychologist.

239.    The group discussed environmental concerns and barriers of the building, plus previous RU concession of proximity between respite area AUD402 and classroom AUD406.

240.    This pathway & area provides a non-fluorescent lit and dim, self-containable corridor.

241.    Diane asked HR for a meeting with her Math Dept. Chair Melanie Pivarski to discuss why she is not being allowed to teach Math110 which is taught in AUD406.

242.    A meeting was convened the following day between HR, Math Dept Chair Melanie Pivarski, Diane's Occupational Therapist Linda Marshall, Diane's Social Worker Marianne Costales-Roman, and Diane.

243.    During that meeting, Diane was told AUD406 was a computer classroom and that she would not be staffed (assigned to teach a class) there.

244.    Diane said she wanted to teach Algebra or Statistics (advanced math, credit courses) but it required a larger room like AUD420.

245.    AUD420 is over 100 feet from the respite area that Diane uses in AUD402.

246.    Diane asked for AUD406 because it has seating capacity for 30 students, and RU had staffed Diane in this room for years.

247. However, RU reconfigured it to only seat 24, knowing, or having reason to know, that Diane would not be able to use it in its reconfigured form without experiencing great stress, pain, & discomfort, making it very difficult for Diane to related to students or teach in it.

248. AUD406's proximity to AUD402 allowed Diane immediate respite in the dimly lit and quiet 30 foot corridor between AUD406 and AUD402.

249. Diane had told Melanie Pivarski ~~on several years~~ that when sirens outside windows became

D.R. 5/29/24

painful, Diane would step into the hallway toward AUD402 for respite.

250. Melanie Pivarski said AUD406 was now unavailable because it is a computer classroom and only holds 24 students, however, this retort seems non-sensical or retaliatory because the Statistics class requires use of computers.

251. This lack of reasonable accommodation prevents Diane from using AUD402 for respite and also for class preparation.

252. Melanie Pivarski seems to believe AUD420's primary problem is its external noise, but this is not the primary problem.

253. AUD420's distance from appropriate respite is the main issue given the hallway's fluorescent lighting, noise, and congestion.

254. Because Diane can't reasonably use AUD420, Melanie won't assign Diane a Statistics or Algebra class to teach.

255. In most of these acts or omissions of disability discrimination against Diane as alleged above, RU has acted through its HR Department or other agents of RU.

## V. CAUSES OF ACTION

### COUNT I
### DISABILITY DISCRIMINATION
### UNDER ADA TITLE I & III, 504, & IHRA

256.    The allegations contained in the preceding paragraphs are incorporated by reference here as if set out here in full.

257.    At all times pertinent, Diane has been an otherwise qualified individual with disabilities as an RU employee.

258.    At all times pertinent, Diane has been an otherwise qualified individual with disabilities as an RU student and prospective student & frequent course shopper.

259.    At all times pertinent, RU has been aware of Diane's disabilities.

260.    RU has discriminated against Diane as an individual with a disability by certain adverse actions, including actions or omissions, practices, and/or policies, some of which appear facially neutral at times.

261.    These adverse actions regard things that include, but are not limited to, job application procedures; hiring; upgrading; rehiring; forms of compensation; making job assignments & forming job classifications; changing organizational structures; arranging position descriptions, lines of progression, & seniority lists; providing fringe benefits available by virtue of employment; selection & financial support for training; and/or other terms, conditions, benefits, or privileges of employment.

262.    These adverse actions also include limiting, segregating, or classify Diane as a job applicant or employee in a way that adversely affects her employment opportunities or status on the basis of disability.

263.    RU failed to take those steps that may be necessary to ensure that Diane as an individual with a disability, was not excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services and otherwise. 28 CFR § 36.303. Auxiliary aids and services.

264.    RU made repeated alterations to its facility but failed to ensure that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including Diane. 28 CFR § 36.402 Alterations.

265.    RU made alterations that affect or could affect the usability of or access to an area of its facility that contains a primary function, but failed to ensure that, to the maximum extent feasible, the paths of travel to the altered area, are readily accessible to and usable by individuals with disabilities, including Diane. 28 CFR § 36.403 Alterations: Path of travel.

266.    These adverse actions also include failure to maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities, including Diane, when it modifies its facilities per 28 CFR § 36.211(a) Maintenance of accessible features, and otherwise.

267.    At all times pertinent, RU has operated and maintained an inaccessible website and internal email system that requires Diane as an individual with disabilities to use as an employee, student, and prospective student & course shopper.

268.    At all times pertinent, RU has limited, segregated, and/or classified Diane as an adjunct faculty job offer applicant or employee in a way that adversely affects her employment opportunities or status on the basis of disability.

269.    RU has engaged in these adverse actions and omissions with reason to know they would adversely affect Diane, but has taken them or failed to take them with deliberate indifference, reckless indifference, or malice.

270.    RU has caused these adverse action and omissions, and Diane has been harmed by these and other discriminatory, adverse acts and omissions by RU.

271.    This harm includes, but is not limited to, emotional distress, pain and suffering, loss of good reputation, segregation & social isolation from her fellow students & teacher, physical & psychological injury, and restricted and impaired her educational & future occupational opportunities and expected earning power, both at RU and otherwise.

## COUNT II
## FAILURE TO ACCOMMODATE
## UNDER ADA TITLE I & III, 504, & IHRA

272.    The allegations contained in the preceding paragraphs are incorporated by reference as if set out here in full.

273.    Diane has requested many reasonable accommodations, especially for auxiliary aids & services as an employee of RU.

274.    Diane has repeated requests for some of the most needed accommodations many times after they have been denied.

275.    Some of these requests were requested to benefit her students with disabilities in order for them to learn.

276.    RU has effectively denied most of Diane's requests for the most needed reasonable accommodations, for herself as an employee and for her students as their math teacher and disability rights advocate.

277.    Most RU denials of Diane's requests for accommodations were made in bad faith without RU offering any effective, alternative accommodations.

278.  Most of these denials resulted in no effective accommodations for Diane.

279.  RU has caused a breakdown of the interactive process on many occasions.

280.  On these occasions, said breakdown has prevented RU from identifying appropriate accommodations for Diane, even when she requested effective accommodations.

281.  RU has engaged in the interactive process in bad faith by causing these breakdowns in the interactive process.

282.  When RU has effectively denied Diane's requests for accommodations as a student or as an employee, RU has not provided Diane with a contemporaneous, written statement of the reasons for denial that explained how her request would work an undue hardship on RU or would be a fundamental alteration of the program at RU.

283.  Diane has been harmed by these denials.

284.  This harm includes, but is not limited to, emotional distress, pain and suffering, loss of good reputation, segregation & social isolation from her fellow students & teacher, physical & psychological injury, and restricted and impaired her educational & future occupational opportunities and expected earning power, both at RU and otherwise.

### COUNT III
### DISCRIMINATORY CRITERIA & METHODS OF ADMINISTRATION
### UNDER ADA TITLE I & III, 504, & IHRA

285.  The allegations contained in the preceding paragraphs are incorporated by reference as if set out here in full.

286.  At all times pertinent, RU has been aware of Diane's disabilities.

287.  RU has discriminated against Diane as an individual with a disability by creating or using certain discriminatory criteria and methods of administration.

288.    At all times pertinent, RU has maintained, operated, and scheduled a training system as a discriminatory method of administration that has proven to be effectively inaccessible to Diane as an individual with disabilities in her role as an employee.

289.    RU has shifted the burdens onto Diane by its discriminatory criteria and methods of administration regarding, *inter alia,* its training system, its modification of facilities, and its requirements to use inaccessible digital communications.

290.    RU has engaged in these things with deliberate indifference, reckless indifference, or malice.

291.    RU has caused Diane harm by said actions and omissions regarding these discriminatory criteria and methods of administration.

292.    This harm includes, but is not limited to, emotional distress, pain and suffering, loss of good reputation, segregation & social isolation from her fellow students & teacher, physical & psychological injury, and restricted and impaired her educational & future occupational opportunities and expected earning power, both at RU and otherwise.

## COUNT IV
### COERCION, INTIMIDATION, HARASSMENT, AND/OR INTERFERENCE UNDER ADA TITLE I & III, 504, & IHRA

293.    The allegations contained in the preceding paragraphs are incorporated by reference as if set out here in full.

294.    The Defendants knew or had reason to know that at all times pertinent that Diane was an otherwise qualified employee with disabilities.

295.    The Defendants knew or had reason to know that at all times pertinent that Diane was an otherwise qualified as a continually prospective student with disabilities who occasionally found

an uncommon RU course that would build on Diane's developing math skills, improve Diane's professional prospects, and fit with her schedule.

296. The Defendants knew or had reason to know that at all times pertinent that Diane was an open, public advocate for her students with disabilities and for herself as an employee, a student, and a continually prospective student, and that, by this, she engaged in statutorily protected activity, or aided or encouraged others in the exercise or enjoyment of ADA protected rights.

297. At times, Defendant RU coerced, intimidated, harassed, and/or interfered with Plaintiff Diane Field in the exercise or enjoyment of her rights granted or protected by the ADA.

298. Said actions and omissions might well deter another reasonable employee or student from complaining about discrimination, requesting accommodations, or otherwise advocating for others with disabilities due to their severity and detriment to them.

299. The Defendant RU and its authorized agents were motivated by an intent to discriminate, whether by deliberate indifference, reckless indifference, or malice.

300. These adverse employment actions and omissions against Diane will continue unless RU is prevented from continuing them.

301. There is a causal link between the Plaintiff's protected activity and the materially adverse actions or omissions.

302. Sometimes this causal link is made apparent by the closeness in time of the advocacy actions and omissions, and the harmful responses by others.

303. At other times, the causal link is apparent from the conduct or expressions showing deliberate indifference, reckless indifference, or malice. See future Exhibit.

304.    These acts and omissions are unlawful acts that constitute a widespread pattern or practice of coercion, intimidation, harassment, and/or interference that has caused and continue to cause harm to the Plaintiff.

305.    This harm includes, but is not limited to, emotional distress, pain and suffering, loss of good reputation, segregation & social isolation from her fellow students & teacher, physical & psychological injury, and restricted and impaired her educational & future occupational opportunities and expected earning power, both at RU and otherwise.

**COUNT V**
**RETALIATION**
**UNDER ADA TITLE I & III, 504, & IHRA**

306.    The Defendant RU or its agents have retaliated against Diane on account of her protected activity by acting or failing to act, in a materially adverse manner.

307.    RU has engaged in these adverse actions with deliberate indifference, reckless indifference, or malice.

308.    There is a causal link between the Plaintiff's protected activity and the materially adverse actions or omissions; sometimes this is made apparent by the closeness in time of the advocacy actions and the harmful responses by others.

309.    At other times, the causal link is apparent from the expressions of deliberate indifference, reckless indifference, or malice. See future Exhibit.

310.    Plaintiff Diane Field has been harmed by these acts & omissions.

311.    This continuing harm to the Plaintiff includes emotional distress, pain and suffering, loss of good reputation, segregation & social isolation from her fellow students & teacher, physical & psychological injury, and these acts have restricted and impaired her educational & future occupational opportunities and expected earning power, both at RU and otherwise.

## COUNT VI
## RAFO AIDED & ABETTED DISCRIMINATION
## UNDER ADA TITLE I & III, 504, & IHRA

312.    The allegations contained in the preceding paragraphs are incorporated by reference as if set out here in full.

313.    At times, RU and its agents solicited the help of RAFO in discriminating or in performing acts & omissions that had the effect of discriminating against the Plaintiff Diane Field.

314.    At some of these times, RAFO or its agents, aided and abetted RU in its acts and omissions that discriminated or had the effect of discriminating against Plaintiff Diane Field.

315.    RAFO harmed Diane as a direct result of this cooperation with RU to discriminate against Plaintiff Diane Field due to her disability.

316.    RAFO has engaged in this aiding & abetting with deliberate indifference, reckless indifference, or malice.

317.    Plaintiff Diane Field has been harmed by these acts & omissions.

318.    This continuing harm to the Plaintiff includes emotional distress, pain and suffering, loss of good reputation, segregation & social isolation from her fellow students & teacher, physical & psychological injury, and these acts have restricted and impaired her educational & future occupational opportunities and expected earning power, both at RU and otherwise.

319.    Diane has been harmed by RAFO's aiding & abetting RU's discriminatory actions and omissions.

### V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment as follows:

### FINDINGS

(1) Find and Declare in favor of the PLAINTIFF DIANE FIELD in full on each count in her Complaint.

(2) Find and Declare that DEFENDANT ROOSEVELT UNIVERSITY has discriminated and continues to discriminate against the PLAINTIFF DIANE FIELD due to her disability by actions and omissions:

      a.) That have the effect of discriminating against her, or of denying her the benefits and opportunities enjoyed by others without disabilities;

      b.) That deny her reasonable accommodations;

      c.) That create and/or maintain discriminatory criteria & methods of administration;

      d.) That interfere with her exercise of federal & state disability rights;

      e.) That retaliate against her for her disability rights advocacy for herself and her disabled students; and

      f.) That solicit others to aid and abet it in said actions and omissions of discrimination against her.

(3) Find & Declare that DEFENDANT ROOSEVELT ADJUNCT FACULTY ORGANIZATION has discriminated & continues to discriminate against the PLAINTIFF DIANE FIELD due to her disability by actions and omissions that aid & abet DEFENDANT ROOSEVELT UNIVERSITY in said acting or failing to act.

(4) Declare that DEFENDANT ROOSEVELT UNIVERSITY and its HR Department interfered with DEFENDANT ROOSEVELT ADJUNCT FACULTY ORGANIZATION in providing disability advocacy for Plaintiff despite knowing that PLAINTIFF DIANE FIELD at all times pertinent has been a dues paying union member in good standing and did request union assistance.

(5) Declare that DEFENDANT ROOSEVELT ADJUNCT FACULTY ORGANIZATION denied

PLAINTIFF DIANE FIELD her rights and discriminated against her due to her disabilities when

it cancelled meeting(s) and otherwise regarding her disability with PLAINTIFF DIANE FIELD

and Plaintiff's Department Chair at the request and direction of DEFENDANT ROOSEVELT

UNIVERSITY through its HR Department.

(6) Declare that DEFENDANTS ROOSEVELT ADJUNCT FACULTY ORGANIZATION, and

ROOSEVELT UNIVERSITY through its HR Department, violated 42 USC 12112(b)(2) by

D.F. 5/29/24

"participating in a contractual or other arrangement or relationship that had the effect of

subjugating" PLAINTIFF DIANE FIELD, "a qualified employee with a disability to the

discrimination prohibited by this sub-chapter (such relationship includes a relationship with a ...

labor union)."

(7) Order DEFENDANTS ROOSEVELT UNIVERSITY & its HR Department and

ROOSEVELT ADJUNCT FACULTY ORGANIZATION to publicly apologize to Plaintiff for

violating her rights under the Americans with Disabilities Act, and Order it also to publicly

apologize for denying her fair union representation that she requested as to her disability rights;

(8) Order DEFENDANTS ROOSEVELT UNIVERSITY & ROOSEVELT ADJUNCT

FACULTY ORGANIZATION to restore a respectful, nondiscriminatory representative

relationship of the Union toward Plaintiff without employer disability discrimination,

interference, or unlawful involvement in union activities.

(9) Enter a temporary, preliminary, permanent injunction, and/or restraining order, and/or other

Order requiring:

(a) DEFENDANT ROOSEVELT UNIVERSITY to cease disability discrimination going

forward against PLAINTIFF DIANE FIELD and its other disabled staff/students;

(b) DEFENDANT ROOSEVELT ADJUNCT FACULTY ORGANIZATION to engage in staff, steward, & leadership training on the ADA in order to represent union members with disabilities faithfully and fully in requesting reasonable accommodations for employment when union assistance is requested by its disabled members;

(c) DEFENDANT ROOSEVELT UNIVERSITY to engage in annual ADA staff training and appoint a full time ADA Coordinator with certification from a reputable ADA coordinator certification program;

(d) DEFENDANT ROOSEVELT UNIVERSITY to engage in the interactive process regarding accomodations for Fall 2024 employment and beyond for PLAINTIFF DIANE FIELD;

(e) DEFENDANT ROOSEVELT UNIVERSITY to staff its departments appropriately so they can address requests for accommodation instead of illegally stopping/deferring the accommodations process due to a lack of staff required to handle said requests legally & properly;

(f) DEFENDANT ROOSEVELT UNIVERSITY to alter its website & email systems to become fully ADA compliant in accordance with the evolving United States Access Board recommended standards & U.S. Department of Justice regulations & guidance.

(g) DEFENDANT ROOSEVELT UNIVERSITY to provide safe, optical "sleeves" on fluorescent lighting for students and staff unable to visually adjust to the demands of fluorescent lighting otherwise;.

(h) DEFENDANT ROOSEVELT UNIVERSITY to provide appropriate signage in high traffic areas within its buildings for staff/students with disabilities, esp. those with specialized visual and/or auditory needs, including PLAINTIFF DIANE FIELD.

(10) Award compensatory damages, to the extent allowed under law, to PLAINTIFF DIANE FIELD from DEFENDANTS ROOSEVELT UNIVERSITY & ROOSEVELT ADJUNCT FACULTY ORGANIZATION, according to the violations of law and the harm each caused, including, but not limited to:

    (a) Lost wages and front pay;

    (b) Compensation for PLAINTIFF DIANE FIELD'S past & continuing therapy and treatment (Occupational Therapy, Vision Doctor, etc.) and for her time spent requesting, bargaining for, adapting, and/or managing all reasonable accommodations she requested, including those proving to be unacceptable, inappropriate, and/or revoked, plus mileage at IRS rates;

    (c) Compensation for time PLAINTIFF DIANE FIELD spent reviewing rights, and drafting & filing documents required by the EEOC and this Court Complaint.

(11) Award punitive damages, to the extent allowed under law, to the Plaintiff from each Defendant according to violations of law, degree of reckless indifference or malice, and other discriminatory action or omission by each Defendant.

(12) Award PLAINTIFF DIANE FIELD reimbursement for costs, including reasonable attorneys' fees, incurred in connection with the underlying EEOC proceedings and with this federal court action in an amount as determined in the discretion of this Court when such claim(s) are ripe.

(13) And, for such other and further relief as the Court deems just and proper.

Date   5/29/24

Respectfully submitted Pro Se,

DIANE FIELD
s/ Diane Field

Diane Field
215 E. Custer St.
Lemont, IL 60439
dianefield95@gmail.com
Phone: 630.863.6221